(864 P.2d 1212)
No. 69,350

RONALD C. BRUNS, *Appellant*, v. KANSAS STATE BOARD OF TECHNICAL PROFESSIONS, *Appellee.*
Aff'd 255 Kan. 728, 877 P.2d 391 (1994).

Opinion filed December 10, 1993.

*Ronald C. Bruns*, appellant pro se.

*Glenda L. Cafer*, of Bennett & Dillon, of Topeka, for the appellee.

Before GERNON, P.J., LEWIS, J., and GERALD T. ELLIOTT, District Judge, assigned.

LEWIS, J.: Ronald C. Bruns is engaged in a campaign to become licensed as a professional engineer in this state. He filed an application for a Kansas professional engineering license with the Kansas State Board of Technical Professions (BTP). The application sought a license based on reciprocity and a waiver of the examination. The BTP denied his application. He appealed the decision of the BTP to the trial court, which affirmed the BTP.

This appeal is from the decision of the trial court. We reverse and remand.

Bruns took the professional engineering exam in the state of Georgia in 1964. He passed the exam and received his Georgia license, which he held until 1972. Later, Bruns moved to Florida and obtained a Florida license through reciprocity. In 1972, Bruns allowed his Georgia license to expire. He has maintained his Florida license and, at the time he sought a license in Kansas, Bruns held a valid, current license from the State of Florida.

The BTP has what it refers to as a written internal "policy." That policy provides that it will not grant a license by reciprocity when the applicant's license in the state of original examination is no longer valid. This policy is in writing and reads specifically as follows:

"The Kansas board shall not approve an application for license as a Professional Engineer . . . by comity with another state board if the applicant's original license has been revoked by the state board of original license or suspended . . . or if the applicant has allowed his or her original license to lapse or expire."

In this case, Bruns' base state of original licensure is Georgia. Since that license has expired, the policy of the BTP required it to deny Bruns a license based on reciprocity. Under the BTP's action, Bruns must now take and pass the Kansas professional engineer examination in order to obtain a Kansas license. Bruns takes exception to this decision and has appealed to this court.

## JURISDICTION

Before we consider the merits of this appeal, we must first resolve a question of jurisdiction.

In order to obtain judicial review of the action of an administrative agency, a petition for review must be filed within 30 days after the agency has reached a final decision on the matter. K.S.A. 77-613(b).

In this case, the record shows that the BTP issued at least four separate orders (actually letters) advising Bruns of its decision. The first letter or order was dated March 20, 1990; the second, August 1, 1990; and the third, January 28, 1991. The petition for judicial review was filed on February 19, 1991, within 30 days of the last order but more than 30 days after the first two.

In deciding this issue, we note that, in form and in substance, all three of the first orders were substantially identical.

The trial court determined that the order of January 28, 1991, was not a "final order" within the perimeters established by K.S.A. 77-536(c). The court remanded the matter to the BTP for issuance of a final order in compliance with the statute. On April 21, 1992, the BTP issued its fourth "denial" and Bruns filed a petition for review of that order in a timely fashion.

The question is whether Bruns was required to petition for a judicial review within 30 days of either of the first two orders issued. We hold that he was not.

It is axiomatic that appeals are only allowed from "final orders." In the world of administrative agencies, the term "final order" is a term of art which is defined by statute. K.S.A. 77-536(c). The trial court in this matter held that the third letter issued was not a final order. The first two orders were the same as the third in form and in substance. They were also not final orders, and, therefore, not appealable.

The fact is, up until the fourth order was issued, the matter was still under active consideration by the BTP. To require a petition for review to be filed while a matter is still pending and being litigated would create mass confusion and be lacking in logic. It would also run afoul of the rule of law that requires one to exhaust administrative remedies before resorting to the courts for review of administrative agency decisions.

## STANDARD OF REVIEW

Our standard of review in cases of this nature is well defined. We have the same scope of review of an agency action as did the district court on the motion for judicial review. *537721 Ontario, Inc. v. Mays*, 14 Kan. App. 2d 1, 2, 780 P.2d 1126, *rev. denied* 245 Kan. 785 (1989). The scope of review is explained at K.S.A. 77-621, which states, in pertinent part:

"(a) Except to the extent that this act or another statute provides otherwise:
(1) The burden of proving the invalidity of agency action is on the party asserting invalidity; and
. . . .
[2](c) The court shall grant relief only if it determines any one or more of the following:
. . . .

(4) the agency has erroneously interpreted or applied the law;

. . . .

(8) the agency action is otherwise unreasonable, arbitrary or capricious."

We stated our standard of review in *Churchill Truck Lines, Inc. v. Department of Human Resources*, 17 Kan. App. 2d 272, 276, 837 P.2d 1322 (1992), wherein we quoted from *State Dept. of SRS v. Public Employee Relations Board*, 249 Kan. 163, 166, 815 P.2d 66 (1991), as follows:

" 'The interpretation of a statute by an administrative agency charged with the responsibility of enforcing that statute is entitled to judicial deference. This deference is sometimes called the doctrine of operative construction. Further, if there is a rational basis for the agency's interpretation, it should be upheld on judicial review. If, however, the reviewing court finds that the administrative body's interpretation is erroneous as a matter of law, the court should take corrective steps.' "

## POLICY OR REGULATION

The BTP's only reason for denying reciprocity to Bruns was its written internal policy. It does not appear that the BTP exercised any discretion in denying reciprocity or engaged in any factfinding other than to determine that Bruns had allowed his Georgia license to expire. The BTP has a written policy which mandates this result in all cases in which the applicant has allowed his or her license to expire in the state of original licensure. Bruns argues that the written policy of the BTP is actually a regulation and is not valid because it was not filed and published as a regulation. We agree.

K.S.A. 77-425 states in part: "Any rule and regulation not filed and published as required by this act shall be of no force or effect." If the written "policy" in question is a "rule" or "regulation," it would have "no force or effect" since it was not filed and published as required by law.

K.S.A. 1992 Supp. 77-415(4) states in pertinent part:

" 'Rule and regulation,' 'rule,' 'regulation' and words of like effect mean a standard, statement of policy or general order . . . of general application and having the effect of law, issued or adopted by a state agency to implement or interpret legislation enforced or administered by such state agency or to govern the organization or procedure of such state agency. *Every rule and regulation adopted by a state agency to govern its enforcement or administration of legislation shall be adopted by the state agency and filed as a rule and regulation as provided in this act.* The fact that a

statement of policy or an interpretation of a statute is made in the decision of a case or in a state agency decision upon or [in] disposition of a particular matter as applied to a specific set of facts does not render the same a rule and regulation within the meaning of the foregoing definition, nor shall it constitute specific adoption thereof by the state agency so as to be required to be filed. A rule and regulation as herein defined shall not include any rule and regulation which: (a) Relates to the internal management or organization of the agency and does not affect private rights or interest; (b) is an order directed to specifically named persons or to a group which does not constitute a general class and the order is served on the person or persons to whom it is directed by appropriate means." (Emphasis added.)

By statute, a rule or regulation is a statement of policy of general application which has the effect of law. The "policy" under consideration here has general application to all persons applying for a professional engineering license by reciprocity or comity. We see this application as being broad enough to satisfy the requirement of "general application." Under its policy, the BTP denies, in a summary fashion, any application for licensure by comity with another state if the original license has been permitted to lapse. The BTP certainly treats its internal policy as having the effect of law, and we conclude that it does have the effect of law under the circumstances shown.

In addition, the statute defines a "rule" or "regulation" as a "statement of policy" issued to "interpret legislation enforced or administered by [a] state agency." It specifically provides that "[e]very rule and regulation adopted by a state agency to govern its enforcement or administration of legislation shall be adopted by the state agency and filed as a rule and regulation as provided in this act." Under the facts shown, we conclude that the written policy in this case was passed by the BTP and utilized by the BTP to "govern its enforcement or administration of legislation." Indeed, in this case, the BTP argues that it passed the policy in question to implement or interpret the provisions of K.S.A. 74-7024(a).

The written "policy" under consideration contains the elements set forth in K.S.A. 1992 Supp. 77-415(4), defining a "rule" or "regulation." Perhaps most significantly, the written "policy" governs the BTP's enforcement and interpretation of K.S.A. 74-7024(a). We hold that, by the specific terms of 77-415(4), the written internal "policy" under consideration in this case is a

"rule" or "regulation" as defined by statute. As a rule or regulation, it was required to be filed and published as such in order to lend it validity. Since it was not filed and published as required by law, the BTP's written internal policy was, in the language of the statute, "of no force and effect."

This appeal illustrates the reasons behind requiring publication of rules or regulations. The principal reason for publication is to provide information to the interested public. If Bruns had been aware of the policy in question, he might have prepared his application with the policy in mind. We think it adverse to the public interest for a state agency to operate under a non-published, binding, non-discretionary, written internal policy which dictates its licensing decisions.

The waiver of examination for reciprocal licenses is provided by statute. The BTP argues that its policy is nothing more than a restatement of the statute. Under this theory, its failure to treat its written policy as a "regulation" is harmless error. The BTP submits its policy mandates the result required by statute. We do not agree.

Kansas has specific statutory requirements for licensure of professional engineers. K.S.A. 74-7021 requires an applicant to have a college degree, four years' engineering experience, and passing scores in fundamentals of engineering and professional practice examinations. The only requirement which the BTP finds lacking in Bruns is the examination requirement because its policy summarily denies waiver of the examination requirement if the base state license has lapsed.

K.S.A. 74-7018 states in part: "Applications . . . shall contain statements made under oath showing the applicant's education and a detailed summary of the applicant's technical work, previous examinations, if any, and the results thereof." K.S.A. 74-7017 requires: "No applicant seeking original license to practice any technical profession shall be entitled to such license without first meeting the requirement to take and pass an examination utilized by the board."

Of particular importance to the issue under consideration is K.S.A. 74-7024(a), which reads in pertinent part:

"Any person who holds a current license or certificate of qualification or registration to practice any branch of the technical professions issued by the

proper authority in any other state . . . may be exempted from examination for licensure in this state *if the requirements under which said license or certificate was issued are of a standard accepted by the board and if the person's record fully meets the requirements of this state in all respects other than examination.*" (Emphasis added.)

The BTP argues that, if the license in the base state is no longer current, it may not be able to determine if the requirements under which the license was issued are the same as Kansas requirements. We believe that concern is met by the burden of proof requirements outlined later in this opinion.

The statutory waiver authority is more liberal and certainly involves more discretion than is permitted under the "policy" in issue. The only qualification which Bruns lacked was taking the required examinations. The BTP refused to waive those required examinations because his original license had expired. The statute, on the other hand, permits the BTP to waive the examination requirement if it finds the requirements under which the Georgia license was issued are acceptable in Kansas. Under its internal policy, the BTP exercised no discretion and made no inquiry into whether the requirements under which the Georgia license was issued were of a standard accepted in Kansas.

The policy of the BTP required no inquiry into the standards under which Bruns' original license was issued. It does not follow the dictates of K.S.A. 74-7024(a). The error of utilizing a non-published policy was not harmless, and the denial of Bruns' application is not necessarily mandated by statute.

We reverse the decision of the trial court and remand the matter to the BTP. On remand, the BTP may not deny the application simply on the basis of the written policy discussed in this opinion.

On remand, the BTP may deny Bruns' application for reciprocity if it determines that the requirements under which his Georgia license was issued do not meet the BTP's standards. The burden of proof on this issue is on Bruns, who must prove that the Georgia requirements for licensing, including the Georgia examination, were such that they meet a standard acceptable in this state. If the applicant does not offer sufficient evidence from which the BTP can determine the issue, then the application for

reciprocity may be denied on the basis that the applicant has failed in his burden of proof.

The decision is one involving the exercise of discretion. Even if the requirements under which the Georgia license was issued are of a standard accepted by the BTP, the BTP is not required to exempt Bruns from examination. The statute only provides that he may be exempted from examination. However, if the BTP determines on remand that the requirements under which the Georgia license was issued were of a standard accepted by the BTP and if Bruns' record fully meets the requirements of this state in all other respects other than examination, the BTP may not be unreasonable, arbitrary, or capricious in denying reciprocity.

We believe that the procedures set forth above are fair to all parties and will ensure that reciprocity is granted only to persons whose base state license requirements are acceptable by the BTP.

We make no judgment as to the validity of the BTP "policy" other than to require that it be filed and published in the manner required for administrative regulations in this state. After this is accomplished, the BTP will be free to apply its regulation. Whether the regulations as written and published are otherwise valid and enforceable are issues we do not reach.

We reverse the decision of the trial court and remand the matter with directions to return it to the BTP for resolution of the issues referred to in this opinion.

Reversed and remanded.