No. 69,350

RONALD C. BRUNS, *Appellant*, v. KANSAS STATE BOARD OF TECHNICAL PROFESSIONS, *Appellee*.

(877 P.2d 391)

Opinion filed July 8, 1994.

*Ronald C. Bruns*, pro se, argued the cause and was on the briefs for appellant.

*Glenda L. Cafer*, of Bennett & Dillon, of Topeka, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

SIX, J.: This is an administrative law professional licensing case. Ronald Bruns appealed from the trial court's order affirming the refusal of the Kansas State Board of Technical Professions (BTP) to license him as a professional engineer. Bruns sought a license based on reciprocity and waiver of the Kansas examination. The Court of Appeals reversed the district court and returned the case

to the BTP. *Bruns v. Kansas State Bd. of Technical Professions*, 19 Kan. App. 2d 83, 864 P.2d 1212 (1993). We granted the BTP's petition for review.

The question for review is whether the BTP properly interpreted K.S.A. 74-7024(a) in applying an internal policy to deny Bruns a license. We answer the question "No" and affirm the result and syllabus of the Court of Appeals.

The authority for judicial review of the BTP's decision is statutorily defined by the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq.* K.S.A. 77-623 provides that agency actions are reviewable by appellate courts as in other civil cases. K.S.A. 77-621 sets forth the applicable scope of review. We exercise the same review of the agency's action as does the district court. *Peck v. University Residence Committee of Kansas State Univ.*, 248 Kan. 450, 456, 807 P.2d 652 (1991).

"We extend deference to an agency's interpretation of its own regulations. The interpretation will not be disturbed on appeal unless it is clearly erroneous or inconsistent with the regulation. *In re Tax Appeal of Newton Country Club Co.*, 12 Kan. App. 2d 638, 647, 753 P.2d 304, *rev. denied* 243 Kan. 779 (1988). The extension of deference, however, does not mean that we abdicate our responsibility of judicial oversight in the review of agency actions." *Reed v. Kansas Racing Comm'n*, 253 Kan. 602, 610, 860 P.2d 684 (1993).

## Facts

The relevant facts are set forth in the Court of Appeals' opinion:

"Bruns took the professional engineering exam in the state of Georgia in 1964. He passed the exam and received his Georgia license, which he held until 1972. Later, Bruns moved to Florida and obtained a Florida license through reciprocity. In 1972, Bruns allowed his Georgia license to expire. He has maintained his Florida license and, at the time he sought a license in Kansas, Bruns held a valid, current license from the State of Florida.

"The BTP has what it refers to as a written internal 'policy.' That policy provides that it will not grant a license by reciprocity when the applicant's license in the state of original examination is no longer valid. This policy is in writing and reads specifically as follows:

'The Kansas board shall not approve an application for license as a Professional Engineer . . . by comity with another state board if the applicant's original license has been revoked by the state board of original license or suspended . . . or if the applicant has allowed his or her original license to lapse or expire.'

"In this case, Bruns' base state of original licensure is Georgia. Since that license has expired, the policy of the BTP required it to deny Bruns a license based on reciprocity. Under the BTP's action, Bruns must now take and pass the Kansas professional engineer examination in order to obtain a Kansas license." 19 Kan. App. 2d at 84.

The BTP concurs in the Court of Appeals' statement of facts with the following additions. Bruns has never taken a professional examination in Florida. The BTP explains that Bruns may obtain a Kansas license by taking and passing the Kansas professional engineering examination or he can reinstate his Georgia license and reapply for licensure in Kansas based on reciprocity with Georgia.

The Court of Appeals also addressed the issue of jurisdiction. See 19 Kan. App. 2d at 85. The issue was resolved in Bruns' favor and not advanced in the BTP's petition for review.

## The Statute

K.S.A. 74-7024 states, in part:

"(a) Any person who holds a current license or certificate of qualification or registration to practice any branch of the technical professions issued by the proper authority in any other state or political subdivision of the United States or in any other country may be exempted from examination for licensure in this state if the requirements under which said license or certificate was issued are of a standard accepted by the board and if the person's record fully meets the requirements of this state in all respects other than examination."

## The BTP's Contentions

The BTP believes the Court of Appeals has interpreted K.S.A. 74-7024(a) to mean that it must look at the standards of the state under which the original license was granted, i.e., Georgia, not those of Bruns' current licensing state, Florida. K.S.A. 74-7024(a) specifically restricts its review to Florida standards and does not allow it to look at Georgia standards. Bruns' Georgia license is no longer current. Kansas' standards require a certain level of education and experience, as well as passage of the Kansas examination. The Florida license was based on reciprocity, so no examination was given by that state. Florida's reciprocity does not meet the standard required from applicants for original licensure in Kansas. Therefore, K.S.A. 74-7024 does not allow waiver of Bruns' examination requirement.

The BTP believes its internal policy is justified based on the fact that it is difficult, or at times even impossible, to obtain information about licensure applicants from states where the applicant is no longer currently licensed. According to the BTP "[n]on-licensees are deleted from the current computer data base, files are moved to archives where they are unaccessible, states are reluctant to devote time and money to provide information on individuals from whom they no longer receive fees, and when information or documentation is received from a state where the applicant's license is not current, there is no guarantee that the information is complete since the state has had no interest in keeping the individual's file accurate once the individual's license lapsed."

When a reciprocal license is granted, the BTP endorses another state's findings regarding the applicant's education, experience, and examination performance as a courtesy to other states and their licensees. The BTP relies upon the representations of the state of original licensure (the base state), which takes responsibility for having approved the applicant's qualifications and abilities through references and examination. Many states require an applicant to have a current license in the base state before granting reciprocity. The base state requirement provides an incentive for individuals to keep their license current at all times in the original state so that there will be an uninterrupted historical record available to other states. The base state requirement assists state boards in preventing applicants from moving state to state to avoid disciplinary action, creditors, and disgruntled clients.

The BTP reasons that its interpretation of K.S.A. 74-7024 is based on the unambiguous language of the statute and experience in licensing applicants through reciprocity. Therefore, it believes that the policy has a rational basis and should command our respect. The BTP claims it is in the best position to protect the public health, safety, and welfare because it deals with applications for examination waiver on a daily basis.

## Bruns' Contentions

Bruns explains that Florida granted him a license based on written examinations taken in Georgia. Florida advised BTP that he had a current license and that the basis of the Florida registration was his Georgia examinations. Georgia informed the BTP that

Bruns' license was not current but indicated that he had a grade of 70 or above at the time of his original licensure. Bruns believes that when Georgia provided the BTP with the test records, it took responsibility for the administration and grading of his examinations.

Bruns sets out the history of the denial of his application. He indicates that the letter of denial dated February 27, 1990, stated: "Pursuant to Kansas Statute and Rules and Regulations, your base state must be current in order to obtain a reciprocal license in Kansas". The denial letter dated March 20, 1990, explained: "The Board has denied your application on the basis that your base state of Georgia is not current." Bruns asserts he could not locate the authority for the base state requirement so he retained two attorneys to give him an opinion concerning the interpretation of K.S.A. 74-7024, the statute he hypothesized the BTP was relying on. He was informed that the statute did not require base state registration so he wrote the BTP and inquired: "2. Do you require that the license with the base state (Georgia) must be current for reciprocity. 3. If the answer to item two is yes, please advise me on what particular. state statute, rule, attorney general opinion, regulation, or court case . . . is the basis for this requirement." Bruns observes that on August 1, 1990, the BTP replied that their last denial had not changed. The letter further indicated that "[i]n order for the Kansas board to consider your application for approval, your original license with the state of Georgia would have to be in good standing, per K.S.A. 74-7026 [sic], and board policy (copy enclosed)." He emphasizes that this was the first time he was furnished a copy of the BTP's policy, nine months after submitting the application. Bruns states that if he had been furnished the policy and told that it was enforced as law, he would have prepared his application differently.

Bruns observes that the ultimate official denial, issued on April 21, 1992, was based on the BTP's internal policy, which is not furnished to applicants. He requests that we order the BTP to issue an engineering license to him because he has fulfilled all statutory requirements.

## The Court of Appeals' Opinion

The Court of Appeals explained:

"The BTP's only reason for denying reciprocity to Bruns was its written internal policy. It does not appear that the BTP exercised any discretion in denying reciprocity or engaged in any factfinding other than to determine that Bruns had allowed his Georgia license to expire. The BTP has a written policy which mandates this result in all cases in which the applicant has allowed his or her license to expire in the state of original licensure." 19 Kan. App. 2d at 86.

The court agreed with Bruns' contention that the written policy of the BTP actually is a regulation that is not valid because it was not filed and published. 19 Kan. App. 2d at 86.

K.S.A. 77-425 states, in part: "Any rule and regulation not filed and published as required by this act shall be of no force or effect." The Court of Appeals interpreted K.S.A. 77-425 to mean that if the written BTP policy at issue "is a 'rule' or 'regulation,' it would have 'no force or effect' since it was not filed and published as required by law." 19 Kan. App. 2d at 86. K.S.A. 1993 Supp. 77-415(4) states, in part:

" 'Rule and regulation,' 'rule,' 'regulation' and words of like effect mean a standard, statement of policy or general order . . . of general application and having the effect of law, issued or adopted by a state agency to implement or interpret legislation enforced or administered by such state agency or to govern the organization or procedure of such state agency. Every rule and regulation adopted by a state agency to govern its enforcement or administration of legislation shall be adopted by the state agency and filed as a rule and regulation as provided in this act. The fact that a statement of policy or an interpretation of a statute is made in the decision of a case or in a state agency decision upon or [in] disposition of a particular matter as applied to a specific set of facts does not render the same a rule and regulation within the meaning of the foregoing definition, nor shall it constitute specific adoption thereof by the state agency so as to be required to be filed. A rule and regulation as herein defined shall not include any rule and regulation which: (a) Relates to the internal management or organization of the agency and does not affect private rights or interest; (b) is an order directed to specifically named persons or to a group which does not constitute a general class and the order is served on the person or persons to whom it is directed by appropriate means."

The Court of Appeals reasoned that 77-415(4) characterizes a rule or regulation as a statement of policy of general application that has the effect of law. 19 Kan. App. 2d at 87. We agree. The court, with reference to the case at bar, explained:

"The 'policy' under consideration here has general application to all persons applying for a professional engineering license by reciprocity or comity. We see this application as being broad enough to satisfy the requirement of 'general application.' Under its policy, the BTP denies, in a summary fashion, any application for licensure by comity with another state if the original license has been permitted to lapse. The BTP certainly treats its internal policy as having the effect of law, and we conclude that it does have the effect of law under the circumstances shown.

"In addition, the statute defines a 'rule' or 'regulation' as a 'statement of policy' issued to 'interpret legislation enforced or administered by [a] state agency.' It specifically provides that '[e]very rule and regulation adopted by a state agency to govern its enforcement or administration of legislation shall be adopted by the state agency and filed as a rule and regulation as provided in this act.' Under the facts shown, we conclude that the written policy in this case was passed by the BTP and utilized by the BTP to 'govern its enforcement or administration of legislation.' Indeed, in this case, the BTP argues that it passed the policy in question to implement or interpret the provisions of K.S.A. 74-7024(a)." 19 Kan. App. 2d at 87.

The Court of Appeals determined that the written policy at issue contained the elements set forth in K.S.A. 1993 Supp. 77-415(4) as the defining attributes of a "rule" or "regulation." 19 Kan. App. 2d at 87. The court found it significant that the written policy governed the BTP's enforcement and interpretation of K.S.A. 74-7024(a) and held

"that, by the specific terms of 77-415(4), the written internal 'policy' under consideration in this case is a 'rule' or 'regulation' as defined by statute. As a rule or regulation, it was required to be filed and published as such in order to lend it validity. Since it was not filed and published as required by law, the BTP's written internal policy was, in the language of the statute, 'of no force and effect.' " 19 Kan. App. 2d at 87-88.

We agree.

The Court of Appeals rejected the BTP's contention that its policy mandates the result required by K.S.A. 74-7024. 19 Kan. App. 2d at 88.

"Kansas has specific statutory requirements for licensure of professional engineers. K.S.A. 74-7021 requires an applicant to have a college degree, four years' engineering experience, and passing scores in fundamentals of engineering and professional practice examinations. The only requirement which the BTP finds lacking in Bruns is the examination requirement because its policy summarily denies waiver of the examination requirement if the base state license has lapsed.

"K.S.A. 74-7018 states in part: 'Applications . . . shall contain statements made under oath showing the applicant's education and a detailed summary of the applicant's technical work, previous examinations, if any, and the results thereof.' K.S.A. 74-7017 requires: 'No applicant seeking original license to practice any technical profession shall be entitled to such license without first meeting the requirement to take and pass an examination utilized by the board.' " 19 Kan. App. 2d at 88.

## Discussion

The language of K.S.A. 74-7024(a) does not foreclose review of base state (Georgia) scores by the BTP through an intermediate state (Florida). The BTP had verification from Florida of the reciprocity license and verification from Georgia of the original test scores.

Much of the BTP's argument centers around the wisdom of its written policy. The BTP does not provide a record citation to support allegations regarding the need for the policy. No witnesses testified in the district court. The BTP policies were described to the district court during argument of counsel. The district court reviewed certain papers in the BTP's file on Bruns. The Court of Appeals commented:

"We make no judgment as to the validity of the BTP 'policy' other than to require that it be filed and published in the manner required for administrative regulations in this state. After this is accomplished, the BTP will be free to apply its regulation. Whether the regulations as written and published are otherwise valid and enforceable are issues we do not reach." 19 Kan. App. 2d. at 90.

"The proper interpretation of a licensing statute is an issue for determination by the court. See *Tillotson v. Abbott*, 205 Kan. 706, 712, 472 P.2d 240 (1970)." *Kaufman v. Kansas Dept. of SRS*, 248 Kan. 951, 959, 811 P.2d 876 (1991). Furthermore, "an administrative regulation may not contravene or nullify a controlling statutory enactment. . . . As is true of any law, the prime objective in construing laws creating and empowering administrative agencies is to ascertain and give effect to legislative intent." *Kansas Commission on Civil Rights v. City of Topeka Street Department*, 212 Kan. 398, 401-02, 511 P.2d 253, *cert. denied* 414 U.S. 1066 (1973).

K.S.A. 74-7024 provides for exemption from examination for licensure if the standards under which the current license (Flor-

ida) was issued are of a standard accepted by the BTP. On remand, the BTP may deny Bruns' application for reciprocity if it determines that the requirements under which his Florida license was issued do not meet the BTP's standards. The burden of proof on this issue is on Bruns, who must prove that the Florida requirements for licensing were such that they meet a standard acceptable to Kansas. If Bruns does not offer sufficient evidence from which the BTP can determine the issue, then the application for reciprocity may be denied on the basis that the applicant has failed in his burden of proof. Florida apparently relied on Bruns' Georgia examination. If the BTP is not satisfied by facial reliance upon Bruns' current Florida license, it may request Bruns to furnish licensing information from Georgia, his original licensing state. The protective effect of the burden of proof analysis will alleviate the BTP's concerns that it may not be able to determine whether the previous examination requirements of an applicant were the same as the Kansas requirements.

The BTP asserts the Court of Appeals' interpretation of the internal policy as a regulation is so broad that it would "void a multitude of properly established agency policies in this state." We do not agree.

The BTP relies upon *In re Tax Appeal of Morton Thiokol, Inc.,* 254 Kan. 23, 864 P.2d 1175 (1993), as support for its internal policy argument. The taxpayer, Morton Thiokol, Inc., contended it was denied due process in the assessment of additional corporate income tax by the Department of Revenue. The taxpayer asserted that the Department of Revenue had changed tax rules and policies without issuing regulations. We rejected the contentions, reasoning that the taxpayer was unable to show that any of the changes complained of constituted a change of "policy of general application, embodied in or represented by a rule." 254 Kan. at 30. *Morton Thiokol* involved the imposition of additional corporate income tax from (1) the use of the domestic combination method of apportioning income and expenses for the multijurisdictional corporation and (2) the treatment of foreign dividends as apportionable business income. In *Morton Thiokol,* we concurred in the conclusion reached by the Board of Tax Appeals

that neither the use of the domestic combination method nor the treatment of the dividends from the foreign subsidiary constituted a change of policy. 254 Kan. at 33. Consequently, the BTP's reliance on *Morton Thiokol* is misplaced.

The BTP's internal policy is a standard. K.S.A. 1993 Supp. 77-415(4) further describes a policy as "having the effect of law" issued to "implement or interpret legislation." Even if the policy were not interpretive, as the BTP suggests, it implements the law.

We have observed that "[t]he requirement for filing and publishing rules and regulations is primarily one of dissemination of information. Members of the public, and others affected thereby, should not be subjected to agency rules and regulations whose existence is known only by agency personnel." *Clark v. Ivy*, 240 Kan. 195, 206, 727 P.2d 493 (1986). The BTP's internal written policy is the type of requirement that should receive public dissemination. Professional licenses affect the ability to earn a living. We note that Bruns was not informed of the BTP's written policy which formed the basis of the denial until August 1, 1990. He filed his application in November 1989.

We affirm the Court of Appeals, reverse the trial court, and remand with directions to return the matter to the BTP.