No. 82,291

STEPHEN W. ABBOTT, O.D., W. CHRIS ARENSBERG, O.D., JOHN W. PAGE II, O.D., DENNIS L. SMITH, O.D., and JAMES C. WILLIAMS, O.D., *Appellants*, v. KANSAS BOARD OF EXAMINERS IN OPTOMETRY and LARRY STOPPEL, O.D., WARREN R. THOMAS, O.D., SHARON MICHEL, O.D., and THOMAS LEMON, duly appointed members of the Kansas Board of Examiners in Optometry, *Appellees*.

(1 P.3d 318)

Opinion filed March 10, 2000.

*Reid F. Holbrook*, of Holbrook, Heaven & Osborn, P.A., of Kansas City, argued the cause, and *Brent G. Wright*, of the same firm, was with him on the brief for appellants.

*Kevin M. Fowler*, of Frieden, Haynes & Forbes, of Topeka, argued the cause, and *Randall J. Forbes*, and *Clinton E. Patty*, of the same firm, were on the brief for appellees.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Appellants are five doctors of optometry (optometrists). The Kansas Board of Examiners in Optometry (Board) publicly censured the optometrists for failing to furnish legally requested information to the Board's investigator and representative. Appellants petitioned the district court for review of the agency action. The district court denied the petition. The optometrists appealed. The case was transferred by this court from the Court of Appeals, pursuant to K.S.A. 20-3018(c).

Each of the optometrists leased space for his professional office from a retail optical dispenser. The Board advised the optometrists that an investigation was being conducted to determine whether customers were being given the impression that the optometrists' practices were part of the unlicensed retail businesses. The optometrists refused to cooperate in the investigation unless a court reporter of their hiring made a record of the investigation interviews. The Board refused to permit the court reporter to attend the investigation sessions. Then the Board's focus shifted to the optometrists' refusal to furnish information for the investigation, and each of them was publicly censured by the Board for that conduct. At issue in this appeal is the disciplinary action for failure to cooperate in the investigation. The original object of investigation, the optometrists' association with nonlicensed retail entities, is not involved in this appeal.

The optometrists do not expressly challenge the factual findings stated in the Board's final orders. The following findings, which are identical for all appellants, are taken from the final orders:

"1. At all times relevant hereto, the Licensee held a license, issued by the Board, to practice optometry in the State of Kansas.

"2. By letter dated November 10, 1993, the Board, through its attorney, advised the Licensee it was investigating possible violations of the Optometry Law. By the same letter, the Board requested the Licensee produce certain documents and appear at its January 21, 1994 meeting to answer questions in furtherance of the investigation.

"3. By letter dated July 11, 1994, the Board, through its attorney, again contacted the Licensee concerning the investigation and again requested the production of documents and the Licensee's presence at the Board's August 19, 1994 meeting to answer questions in furtherance of the investigation. That letter also specifically advised the Licensee that K.S.A. 65-1517(p) made failure to furnish the Board, its investigators or representatives any information legally requested by the Board an independent basis for disciplinary action against an offending Licensee.

"4. By letter dated July 28, 1994, the Licensee's attorney contacted the Board's attorney requesting that the Board members recuse themselves from the investigation because of bias or, alternatively, that the Board not be shown the requested documents because of the confidential nature of those documents.

"5. By letter dated August 5, 1994, the Licensee was notified, through his attorney, that the investigative questioning to be done on August 19, 1994 would

not be done at an open public meeting of the Board, but would be conducted in private by only the Board President and the Board's attorney.

"6. By letter dated August 16, 1994, the Respondent was advised, through his attorney, that the Board's representatives who would be conducting the investigative questioning, did not believe the presence of a court reporter would be appropriate at the August 19, 1994 investigative meeting with the Board's president and attorney and that they would prefer to not have a court reporter present.

"7. On August 19, 1994 the Respondent appeared with his attorneys, but the Licensee refused to answer questions to be posed as part of the Board's investigation without the court reporter present."

The Board concluded that the optometrists were not entitled to have a court reporter present for the investigative session, as a matter of law and a matter of policy. Thus, according to the Board, its request for information had been legal. By refusing to cooperate at the investigative sessions, the optometrists failed to furnish legally requested information. The record on appeal includes a transcript of the confrontation which occurred at the August 19, 1994, meeting. The court reporter hired by the optometrists was present and prepared the transcript. The animosity between counsel for the Board and counsel for the optometrists is clearly reflected in the transcript. Although the optometrists stated they would answer any and all of the Board's questions, they would do so only in the presence of their court reporter. The attorney for the Board refused to proceed with the questions as long as the court reporter was present; thus, there was no questioning of the optometrists.

K.S.A. 65-1517(p) provides that a licensed optometrist is subject to discipline, including public censure, upon a finding that he or she failed to furnish information legally requested by the Board. The Board's decision was that each of the optometrists should be publicly censured for failing to furnish the Board's investigator and representative information legally requested by the Board.

The optometrists first argue that the Board's refusal to conduct a hearing before imposing discipline deprived them of due process under the federal and state Constitutions. In its orders, the Board stated that its action had been taken on a motion for summary judgment "submitted by the Board's representative." The Board noted that K.S.A. 77-519 of the Kansas Administrative Procedures Act sanctions the use of summary judgment in administrative pro-

ceedings. K.S.A. 77-519(a) provides: "The presiding officer . . . shall give all parties full opportunity to file . . . motions, including, but not limited to, motions to dismiss and motions for summary judgment."

The optometrists rely on *Bracegirdle v. Board of Nursing*, 159 Wis. 2d 402, 464 N.W.2d 111 (Wis. App. 1990). Bracegirdle was charged by the Nursing Board with using excessive physical force in the removal of a nursing home resident's dentures. The examiner concluded that she had not used excessive force in attempting to remove the dentures. The board adopted some of the examiner's findings but varied from the examiner's decision by adding that Bracegirdle's verbal and physical encouragement to persuade the patient to do what he declined to do constituted an improper act of force or mental pressure. On this basis, the board concluded that Bracegirdle violated the administrative code, and costs were assessed against her. The Wisconsin Court of Appeals reversed the board's decision. It concluded that she had not violated the administrative code. In addition, it concluded that the board violated Bracegirdle's right to notice and an opportunity to be heard when it found that she had violated the code by conduct not charged. 159 Wis. 2d at 411-12.

The optometrists' reliance on *Bracegirdle* is misplaced. Bracegirdle did not refuse to cooperate in an investigation. Her only conduct in question was the incident in which she attempted to remove a patient's dentures. She was charged with using excessive force. At the first and second levels of adjudication, she was exonerated of the charged conduct. At the second level, however, with no notice to the accused, the board found that she was in violation of the code for previously uncharged conduct arising out of the same dentures incident. The offense Bracegirdle was found guilty of was announced for the first time in the Nursing Board's decision; thus, she had no notice that uncharged conduct was being considered and no opportunity to defend herself with regard to it.

The facts of the present case distinguish it from *Bracegirdle*. The present case arose from an investigation rather than from an adjudication. The Board asked the optometrists to furnish information for the investigation of possible violations of the prohibition

on association or perceived association with unlicensed retail optical dispensers. The letters requesting the optometrists to appear for investigative sessions advised them that refusing to cooperate was an independent ground for disciplinary action. With knowledge of the statutory requirement of cooperation and the statutory sanction for refusing to cooperate, the optometrists refused to participate in the investigative sessions. In doing so, they knowingly engaged in prohibited conduct separate and independent from the conduct under investigation.

The Board calls to the court's attention the case of *Anderson v. Board of Medical Examiners*, 95 Or. App. 676, 770 P.2d 947 (1989). Anderson was under investigation by the Board of Medical Examiners respecting her treatment of four patients. She failed to comply with a subpoena duces tecum issued by the board for an informal investigatory interview. As a result, her license to practice medicine was revoked by the board on the ground that she willfully refused to appear for an informal interview with the board in violation of a state statute. In affirming the revocation, the Oregon Court of Appeals stated:

"ORS 677.190(23) specifies that a failure to cooperate with a Board investigation in exactly the way that petitioner did is a ground for revocation. Had the legislature not so provided and had it created only 'substantive' grounds for revocation, the Board's ability to revoke a license would often be dependent on the outcome of an investigation that the licensee could impede or prevent. Agency investigations and disciplinary proceedings could be and sometimes might have been instruments of harassment and other evils. The law provides remedies for such agency misconduct. However, it does not allow a licensee to use self-help of the kind that petitioner indulged in here." 95 Or. App. at 681.

In its review of the present case, the district court was guided by *State v. Savaiano*, 234 Kan. 268, 670 P.2d 1359 (1983). Savaiano, an attorney licensed to practice in Kansas, refused to cooperate in the disciplinary administrator's informal investigation of a complaint that had been filed against him by a former client. A formal complaint was then filed against him alleging his refusal to cooperate in the investigation of the original complaint as well as the original complaint. Savaiano cooperated once the formal complaint was on file. The hearing panel found no violation with regard to

his representation of the former client, but it did find that he failed to cooperate in the informal investigation as required by Supreme Court rule. 234 Kan. at 271. This court disciplined Savaiano by "public censure" for that failure. 234 Kan. at 275.

Since *Savaiano*, this court has disciplined several attorneys for failing to cooperate in an investigation. See, *e.g., In re Williamson*, 260 Kan. 568, 918 P.2d 1302 (1996); *In re Jackson*, 252 Kan. 219, 843 P.2d 257 (1992); *In re Pringle*, 248 Kan. 498, 808 P.2d 1339 (1991); *In re Price*, 237 Kan. 624, 701 P.2d 1337 (1985); and *State v. Caenen*, 235 Kan. 451, 681 P.2d 639 (1984). In each of these cases, the conduct on which the disciplinary action was based included failure to cooperate in the investigation. In *Pringle*, respondent's petition for reinstatement was denied solely for noncooperation. In *Jackson*, respondent's failure to cooperate in the investigation was the sole basis for the disciplinary action.

Here, shortly after the disciplinary proceedings were commenced for failure to cooperate in the investigation, the optometrists filed an action in the district court alleging that the Board's denial of their right to record the meeting of August 19, 1994, violated the Kansas Open Meetings Act, K.S.A. 75-4317 *et seq*. The district court held they had no right to record the meeting under the Open Meetings Act and the Court of Appeals affirmed (No. 76,412, unpublished opinion filed May 30, 1997, *rev. denied* 262 Kan. 959 [1997]). Thereafter, a pretrial conference was held on January 28, 1998, and, as noted by the district court, all the parties and counsel agreed to a summary disposition. The Board filed a motion for summary judgment against the optometrists under K.S.A. 65-1517(p) for refusing to furnish information, and that motion served as additional notice to the optometrists of the charges of noncooperation against them. There was no material fact in dispute. The optometrists had relied on the existence of a right to have the investigative meeting recorded. They lost that issue in their action alleging the Board's action violated the Open Meetings Act. There is no factual dispute that the optometrists refused to cooperate with the investigation and respond to the Board's questions. The optometrists did not oppose the motion for summary judgment on the grounds that there were material facts in dispute.

Instead, they conceded that the facts were undisputed and based their argument on "their legal rights." Since there was no factual dispute, there was no reason for a hearing. Thus, the Board's failure to conduct a hearing before sanctioning the optometrists did not deprive them of due process.

The optometrists also contend that the Board's decision was unreasonable and arbitrary and violated the state and federal constitutional guarantees of equal protection. They allege that a sixth optometrist was present on August 19, 1994. Like appellants, they assert, this sixth optometrist refused to answer questions without a record being made by a court reporter. They further assert, however, that the Board did not take any action against the sixth optometrist or his license. The Board counters that there is nothing in the record about another optometrist and that the issue is not properly before the court because it was not raised in the administrative tribunal. The Board's assertion about the vacuum in the record is incorrect. The record indicates that there was a sixth optometrist under investigation by the Board and named as a plaintiff in the optometrists' federal declaratory judgment action. There is no way of telling, however, whether he is the sixth optometrist referred to by the optometrists. In any event, what has not been called to the court's attention is a record sufficient to establish the claimed error. Assertions in an appellate brief do not satisfy inadequacies in the record on appeal. Hence, the claim of alleged error fails. *Smith v. Printup*, 254 Kan. 315, Syl. ¶ 14, 866 P.2d 985 (1993).

Two additional arguments made by the optometrists relate to the Board's refusal to permit the investigative session to be recorded: They are that the Board improperly interpreted and applied K.S.A. 65-1517(p) and that, contrary to a material assertion in its order granting summary judgment, the Board does not have a policy of prohibiting optometrists from recording investigative sessions.

With regard to the statute, the optometrists seem to be arguing that their ultimate willingness to comply with the request to submit to investigative interviews should have barred the Board's sanctioning them for their initial refusal. As we previously noted, the

optometrists filed a court action seeking a determination that the Board's refusal to permit a court reporter to make a record of the investigative sessions constituted a violation of the open meetings statutes. Several years later, after receiving notice that this court denied their petition for review, the optometrists advised counsel for the Board: "We are now prepared to appear for the interviews before the Board." Their position seems to be that they should not be penalized for refusing to cooperate the first time around because they had a right to seek redress and, after exercising that right, they agreed to cooperate. Their argument ignores the lesson of *Savaiano*. He refused to cooperate in the informal investigation, but fully cooperated once a formal complaint was filed. Even after the formal complaint was determined to be without merit, Savaiano was sanctioned by this court for his initial failure to cooperate in the investigation. The optometrists chose not to cooperate and must suffer the consequences of their failure to successfully challenge the Board's action. The August 19 meeting was not a formal hearing but, rather, part of the investigative process. Although one might question why the Board would object to recording the questioning session, the optometrists did not have a legal right to do so or, in effect, dictate how the Board is to investigate complaints against its members.

With regard to the policy question, the optometrists argue that the Board improperly based its decision to discipline them on the premise that not permitting investigative sessions to be recorded was a Board policy. In its order granting summary judgment, the Board stated: "The policy of the Board is not to allow a licensee to refuse to answer investigative questions without a court reporter present, thereby directing how the Board will conduct an investigation." The optometrists would have the court conclude that if the Board had such a policy, it would be of no force or effect because it had not been subjected to rulemaking procedures under K.S.A. 77-415 *et seq*.

The optometrists rely on *Bruns v. Kansas State Bd. of Technical Professions*, 255 Kan. 728, 877 P.2d 391 (1994). Bruns sought to be licensed in Kansas as a professional engineer based on reciprocity. The Board of Technical Professions (BTP) had a written

internal policy of not approving an application for a professional engineer's license by comity with another state board if the applicant had allowed his or her original license to lapse or expire. The question for this court was whether the BTP properly interpreted the licensure statute, K.S.A. 74-7024(a), in applying an internal policy to deny Bruns' license application. The operative principle was stated by the court as follows: "An internal policy of a state agency which is adopted to govern the agency's enforcement or administration of legislation is a rule or regulation as a matter of law under K.S.A. 1993 Supp. 77-415(4) and to be effective must be filed and published as a rule or regulation." 255 Kan. 728, Syl. ¶ 2. The court found that the BTP's internal policy was of no effect because, even though it purported to interpret and implement the law, it had not been processed as required of agency rules and regulations. In contrast, the Board policy at issue in the present case does not purport to interpret or implement statutory requirements. Unlike the professional licensure policy in *Bruns*, this Board's policy of not permitting the licensee to dictate the terms of the investigation is not the type of requirement or prohibition that warrants public dissemination because ignorance of it could affect a licensee's ability to earn a living.

The optometrists also challenge the constitutionality of K.S.A. 65-1517(p) on the ground that it is too vague. The basis for their challenge is in the phrase "information legally requested by the board." They assert that the language of the statute contemplates a determination of the legality of an information request. The need for a judicial determination, according to the optometrists, means that the statute does not give fair warning to persons potentially subject to it.

The appropriate inquiry is whether the statute gives fair warning of proscribed conduct when measured by common understanding and practice. It has been described as a commonsense determination of fundamental fairness. *State ex rel. Murray v. Palmgren*, 231 Kan. 524, 532, 646 P.2d 1091 (1982). In particular, a noncriminal statute such as the one at issue need only be set out in terms an ordinary person exercising ordinary common sense can sufficiently understand and comply with. K.S.A. 65-1517(p) requires a

licensee to comply only with a legally proper request for information. Occasionally, but certainly not inevitably, it may lead to a request for judicial determination. Moreover, the obvious purpose for the legislature's including the "legally requested" phrase in the statute was for the protection of a person subject to a board's inquiry. Thus, we do not find that the statute is unconstitutionally vague.

Finally, the optometrists contend that they should have been allowed to conduct discovery on three topics: (1) the Board's policy of not permitting licensees to record investigative sessions; (2) why the sixth optometrist was not subjected to disciplinary action; and (3) the Board's motive for taking disciplinary action against the five optometrists who are appellants in this action. They do not offer explanations of how the discovery they desired to conduct might have affected the outcome. The motion for summary judgment was granted on undisputed material facts. Discovery was not needed for that purpose.

The judgment of the district court is affirmed.

ABBOTT, J., dissenting: I would reverse the public censure based on public policy.

When condensed, what happened here is the optometrists were called in for investigative questioning to determine whether formal charges would be filed against them. The public would be barred from the meeting. The optometrists wanted a court reporter present. There would be no delay or inconvenience, and the optometrists would bear the expenses and make a copy available to the Board. The Board refused the request, and the optometrists refused to proceed without a court reporter.

The optometrists then tested their right to have a court reporter in court and lost. They then offered to testify without a court reporter present. The Board refused and publicly censured the optometrists for their initial insistence on a court reporter being present.

The optometrists, in good faith, felt they had a right to have a court reporter present. They had an important property right at the core of the controversy.

I personally feel a private citizen should be able to record any conversation with a public official if it can be done without delay and without cost to the government. Proceedings held in private where the public is barred and a person's livelihood is threatened is a frightening thing. Here, I would reverse the public censure as unjustifiable and contrary to public policy. Public policy should give our citizens whose livelihood is being called into question the right to record the proceeding if it can be done without delay and at no cost to the government. To allow what was done here is to chill others who in good faith attempt to protect themselves.

DAVIS, J., joins in the foregoing dissenting opinion.