The Honorable Melvin J. Neufeld State Representative, 115th District 7405 15 Road Ingalls, Kansas 67853
Dear Representative Neufeld:
As chairperson of the Joint Committee on Administrative Rules and Regulations, you inquire whether the Kansas Agricultural Remediation Board is a state agency for purposes of promulgating rules and regulations in accordance with K.S.A. 2000 Supp. 2-3710.
While the Legislature may delegate to state agencies the power to enforce and interpret legislation, the Kansas Constitution[1] prohibits the delegation of legislative power to a nongovernmental association or group.[2] At issue is whether the Legislature violated the Constitution by delegating authority to an entity that is a nongovernmental association or, in other words, whether the Legislature unlawfully delegated legislative authority. In order to determine whether the Kansas Agricultural Remediation Board is a state agency, we must determine whether it constitutes a public administrative agency, created by statute and having properly delegated powers and accountability.[3] Because our question involves an interpretation of a statute, our question is one of legislative intent, to be discerned from the entire act.[4]
The Legislature enacted the Agricultural and Specialty Chemical Remediation Act,[5] to provide low interest loans to eligible persons to pay for the costs of corrective action approved or ordered by the Kansas Department of Health and Environment[6] and to impose environmental assessments.[7] The Legislature established the Agricultural Remediation Board (hereinafter Board),[8] consisting of five members appointed by the Governor and confirmed by the Senate, to administer the remediation linked deposit loan fund[9] and the reimbursement program,[10] and specifically conferred the power to promulgate regulations to interpret the terms and conditions of any reimbursements from the fund and to establish the criteria for classification and prioritization of properties contaminated by a release of agricultural or specialty chemicals.[11] The Legislature provided clear standards for the exercise of the delegated power by restricting eligibility for funding to those approved by the Kansas Department of Health and Environment[12] and by authorizing the Kansas Department of Agriculture to collect the assessments.[13] Additionally, the Legislature placed limits on the amounts of reimbursement to eligible persons and placed requirements for independent audits and reporting to the Governor and the Legislature.[14]
Legislative intent was at issue when the Kansas Supreme Court addressed the same question of unlawful delegation in State, ex rel. Tomasic v.Unified Government of Wyandotte County/Kansas City, Kansas.[15]Tomasic involved a quo warranto action to determine whether the Legislature properly created a commission as an administrative agency authorized to consolidate a city and county. The Court found no unlawful delegation and held that a legislatively created, governor appointed commission of private sector individuals was a public administrative body because the public entity had powers and accountability properly delegated to it and because the commission did not exist prior to or independent of the legislative authorization.[16]
It is clear that the Legislature intended to establish the Kansas Agricultural Remediation Board as a governmental entity by statutorily creating it, providing for appointment of its governing body and providing it with sufficient guidelines to avoid an unlawful delegation of legislative authority, and thereby lawfully creating a state agency. Accordingly, it is our opinion that the Board is a state agency for the purpose of promulgating regulations to implement its legislative directive to administer and interpret the Agricultural and Specialty Chemical Remediation Act.
Your second question is whether the Board's operating standards and procedures, if established in accordance with K.S.A. 2000 Supp.2-3710(c), fall into the definition of a rule and regulation which must be promulgated in accordance with the Rules and Regulations Filing Act.[17] The statute authorizes the Board to:
 "Establish operating standards and procedures which shall include, but are not limited to the following: (1) With respect to the remediation linked deposit loan program, provisions governing board approval of projects for which applications for loans may be made; (2) with respect to the remediation reimbursement program, provisions governing application procedures, determination of eligible corrective action costs and reimbursement of payment of eligible corrective action costs; and (3) with respect to both programs, provisions governing conflicts of interests appeals procedures, review and priority determinations and enforcement of the provisions of K.S.A. 2000 Supp.2-3701 through 2-3714, and amendments thereto."
The statutory provision authorizes the Board to "establish standards and procedures," rather than to promulgate regulations, to govern the approval of projects to receive loan monies, to govern the application procedures for who is eligible for corrective costs and to govern any conflicts between the loan program and the reimbursement program.
The Kansas Court of Appeals has addressed whether a state agency may use policy or standards not otherwise promulgated as a regulation in order to make determinations critical to the purpose for which the agency was created. In Bruns v. Kansas State Board of TechnicalProfessions,[18] the Board of Technical Professions (BTP) applied an internal policy, not promulgated as a regulation, to summarily deny any application for a reciprocal license. It was the policy of the BTP to deny an application for a reciprocal license when the applicant had permitted his original license in the state where he was first licensed by taking an examination to lapse. Ronald Bruns, initially licensed in Georgia, had moved to Florida, obtained a license by reciprocity and allowed his original or base state license from Georgia to lapse. The court applied K.S.A. 77-415(4), setting forth the elements or attributes of a rule or regulation, and determined that the policy must be filed and published as a regulation in order for it to be valid and enforceable.
K.S.A. 77-415(4) defines a regulation and states in relevant part:
 "`Rule and regulation,' `rule,' `regulation' and words of like effect mean a standard, statement of policy or general order, including amendments or revocations thereof, of general application and having the effect of law, issued or adopted by a state agency to implement or interpret legislation enforced or administered by such state agency or to govern the organization or procedure of such state agency. Every rule and regulation adopted by a state agency to govern its enforcement or administration of legislation shall be adopted by the state agency and filed as a rule and regulation as provided in this act. . . . A rule and regulation as herein defined shall not include any rule and regulation which: (a) Relates to the internal management or organization of the agency and does not affect private rights or interest; . . . (p) is a pamphlet or other explanatory material not intended or designed as interpretation of legislation enforced or adopted by a state agency but is merely informational in nature."
The standards and procedures authorized by K.S.A. 2000 Supp. 2-3710(c) will determine how the Board will approve the projects that will receive money from a fund intended to direct financial assistance to property owners faced with costs associated with soil and groundwater contamination caused by agricultural or specialty chemicals, how the applicants will apply, what corrective cost will be funded, and how conflicts and appeals will be handled. The standards are clearly to be adopted to implement and interpret the Remediation Act.
Accordingly it is our opinion that the Board must promulgate the standards and procedures as regulations, pursuant to the Rules and Regulations Filing Act if they are to have the force and effect of law.
In conclusion, the Agricultural Remediation Board is a state agency for the purpose of promulgating rules and regulations to implement its legislative directive to administer, enforce or interpret the Agricultural and Specialty Chemical Remediation Act. Additionally, in order for the Board's standards and procedures to have the force and effect of law, they must be promulgated as regulations in accordance with the Rules and Regulations Filing Act, K.S.A. 77-415 et seq.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Guen Easley Assistant Attorney General
CJS:JLM:GE:jm
[1] Kan. Const., Art. 2, § 1.
[2] Gumbhir v. Kansas State Board of Pharmacy, 228 Kan. 579 (1980);State, ex rel. State Bd. of Healing Arts v. Beyrle, 269 Kan. 616
(2000).
[3] State, ex rel. Tomasic v. Unified Government of WyandotteCounty/Kansas City, Kansas, 264 Kan. 293 (1998).
[4] Todd v. Kelly, 251 Kan. 512 (1992); Beyrle, supra, note 2.
[5] K.S.A. 2000 Supp. 2-3701 et seq.
[6] K.S.A. 2000 Supp. 2-3703, 2-3704 and K.S.A. 2000 Supp. 2-3708, as amended by L. 2001, Ch. 47, § 2.
[7] K.S.A. 2000 Supp. 2-3713, as amended by L. 2001, Ch. 47, § 1.
[8] K.S.A. 2000 Supp. 2-3709.
[9] K.S.A. 2000 Supp. 2-3703 also authorizes the State Treasurer to administer the loan program.
[10] K.S.A. 2000 Supp. 2-3710 (a).
[11] K.S.A. 2000 Supp. 2-3710(b) and (c).
[12] K.S.A. 2000 Supp. 2-3708, as amended by L. 2001, Ch. 47, § 2.
[13] K.S.A. 2000 Supp. 2-3711.
[14] K.S.A. 2000 Supp. 2-3710.
[15] 264 Kan. 293 (1998).
[16] Ibid., at 302-303.
[17] K.S.A. 77-415 et seq.
[18] 19 Kan. App. 2d 83 (1993).