(940 P.2d 78)
No. 76,542

LAFE GILMORE, *Appellee*, v. DAVID R. MCKUNE, TERRY NICODEMUS, STATE OF KANSAS, and KANSAS DEPARTMENT OF CORRECTIONS, *Appellants*.

—

Opinion filed May 30, 1997.

*Jeff Cowger*, special assistant attorney general, Lansing Correctional Facility, for appellants.

*Charles J. Cavenee*, of Legal Service for Prisoners, Inc., of Lansing, for appellee.

Before GERNON, P.J., LEWIS, J., and VICKERS, S.J.

GERNON, J.: This is an appeal by David McKune and other officials of the Lansing Correctional Facility (LCF) from an order

granting part of Lafe Gilmore's petition for writ of habeas corpus in which he challenged his placement in a newly created classification/status.

The district court ruled that the policy memorandum which created and defined an "unassigned for cause" status was invalid because the filing and publication requirements under K.S.A. 77-415 *et seq.* for rules and regulations were not fulfilled.

The parties agree on the facts. McKune, the warden of the LCF, issued a policy memorandum dated June 12, 1995, which was designated to serve as a temporary inclusion to the facility's General Order 19,103. The policy memorandum states, in part:

"Effective immediately, Inmates shall be considered as Unassigned for Cause under the following provisions and for the periods specified.

"Unassigned for Cause (UAC) shall be defined as those inmates found guilty of a Disciplinary Report that involved any of the following: an upgrade in their security custody classification resulting in transfer to a higher custody housing unit, those that are separated from employment or programming due to placement in segregation, or removal from employment/programming that was related to that assignment. This shall include those inmates who have refused to accept employment assignments or required programming.

"Those inmates assigned UAC status related to employment or programming shall remain in said status for a minimum period of 90 days. All other inmates assigned this status shall remain UAC for a minimum of 30 days. This shall be monitored by the Unit Team. Said status shall begin upon the assigning of UAC status at time of transfer or upon a guilty finding of an applicable Disciplinary Report or release from Disciplinary Segregation status.

"Inmates on UAC status shall not be eligible for any assignment to employment or programming during this period. As such, they shall not be entitled to receive any incentive pay. Inmates assigned UAC status are considered to be eligible for all privileges provided to the inmate population except those specifically prohibited by other [Internal Management Policies and Procedures], General Orders or Policy Statements."

Gilmore, an inmate at LCF, was housed in the medium security section of the facility. Gilmore was offered but refused to participate in basic education and sex offender treatment programs. As a result of his refusal and the implementation of the new policy, Gilmore was assigned UAC status. He was also moved to different housing at LCF pursuant to another policy change which required

mandatory rehousing for inmates who refused to participate in programming.

Gilmore filed a petition for writ of habeas corpus pursuant to K.S.A. 60-1501, in which he challenged his removal from the medium security unit and his changed classification. The district court rejected Gilmore's arguments concerning his mandatory transfer from the medium security unit to different housing. However, the court granted that portion of Gilmore's petition which challenged the June 12, 1995, policy memorandum.

The district court found the memorandum constituted a rule or regulation as defined by K.S.A. 1996 Supp. 77-415(4) and, therefore, was invalid since the filing and publication requirements under K.S.A. 77-415 *et seq.* had not been met. The officials at LCF timely appeal from this ruling.

LCF argues the district court erred in finding that the policy memorandum was a rule or regulation as defined by K.S.A. 1996 Supp. 77-415(4). LCF contends the policy memorandum was an order issued by the warden of LCF pursuant to K.S.A. 1996 Supp. 75-5256 and is exempt from the filing and publication requirements of K.S.A. 77-415 *et seq.*

Gilmore contends the legal theories LCF raises on appeal are not properly before this court because they were never presented to the district court. See *Sharp v. State*, 245 Kan. 749, 753, 783 P.2d 343 (1989) ("A legal theory may not be asserted for the first time on appeal."), *cert. denied* 498 U.S. 822 (1990). Gilmore recognizes there is an exception to this general principle where the new theory involves only a question of law that may be decided on established facts but maintains the present situation does not fall within this exception. See *Jones v. Hansen*, 254 Kan. 499, 501-02, 867 P.2d 303 (1994).

We conclude that LCF's contentions do fit within this exception because they concern questions of law and may be decided on the facts presented at trial. Gilmore maintains there is no evidence showing the reason for the policy or the authority which the warden relied upon in implementing the UAC policy. This type of evidence, while helpful, is not determinative of the legal issues raised in this case. Moreover, Gilmore was given a full and fair opportu-

nity to brief and argue the issues before this court. Accordingly, LCF's contentions can be entertained on appeal.

At the outset, we note that the policy or order at issue in this case does not raise a constitutionally protected right, but rather appears to involve the administrative function necessary for the day-to-day management of LCF. See *Sandin v. Conner*, 515 U.S. 472, 132 L. Ed. 2d 418, 429-30, 115 S. Ct. 2293 (1995). Since courts should refrain from reviewing prison officials' decisions regarding these type of matters, the district court and this court could have summarily dismissed Gilmore's contention on that basis. See *Lile v. Simmons*, 23 Kan. App. 2d 1, 3-4, 929 P.2d 171 (1996). However, since the law regarding the issuance of a policy or order of the nature in question needs further clarification, we will address the merits of LCF's appeal.

Resolving this issue requires this court to review the trial court's conclusion of law and its interpretation of several statutes. These determinations involve questions of law over which this court has unlimited review. *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, 283, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995). "When determining a question of law, [an appellate] court is not bound by the decision of the district court." *Memorial Hospital Ass'n, Inc. v. Knutson*, 239 Kan. 663, 668, 722 P.2d 1093 (1986).

The district court found the policy memorandum fell within the definition of a rule or regulation under K.S.A. 1996 Supp. 77-415(4) and concluded that it was an improper attempt to issue a temporary rule under K.S.A. 77-422. The court stated:

"The only argument made by the respondent on this issue is 'the unassigned for cause status and the housing of UAC inmates policies were published by their placement in the General Orders after approval by the principal administrator allegations are without merit [*sic*].' (resp. brief p. 10) The Court has not been provided with any authority that indicates that placement in General Orders after approval by the principal administrator satisfies the requirements of filing and publication set forth in K.S.A. 77-415 through 77-437. Therefor[e], the Court finds that the memorandum of June 12, 1995 should be set aside until such time as the filing and publication requirements are met."

K.S.A. 1996 Supp. 77-415(4) states, in part:

" 'Rule and regulation,' 'rule,' 'regulation' and words of like effect mean a standard, statement of policy or general order . . . of *general application* and having the effect of law, issued or adopted by a state agency to implement or interpret legislation enforced or administered by such state agency or to govern the organization or procedure of such state agency. Every rule and regulation adopted by a state agency to govern its enforcement or administration of legislation shall be adopted by the state agency and filed as a rule and regulation as provided in this act. The fact that a statement of policy or an interpretation of a statute is made in the decision of a case or in a state agency decision upon or disposition of a particular matter as applied to a specific set of facts does not render the same a rule and regulation within the meaning of the foregoing definition, nor shall it constitute specific adoption thereof by the state agency so as to be required to be filed. A rule and regulation as herein defined shall not include any rule and regulation which: (a) Relates to the internal management or organization of the agency and does not affect private rights or interest; (b) is an order directed to specifically named persons or to a group which does not constitute a general class and the order is served on the person or persons to whom it is directed by appropriate means." (Emphasis added.)

In *Bruns v. Kansas State Bd. of Technical Professions*, 19 Kan. App. 2d 83, 864 P.2d 1212 (1993), *aff'd* 255 Kan. 728, 877 P.2d 391 (1994), this court considered whether an internal policy of a state board constituted a rule or regulation under 77-415(4). In *Bruns*, the Board of Technical Professions (BTP) denied Bruns' application for a professional engineering license based on reciprocity and waiver of the examination. The BTP based its decision on a written internal policy which denied a license by reciprocity when the applicant's license from the state of original licensure was no longer valid. Bruns appealed to the district court, which affirmed the BTP's decision.

On appeal to this court, Bruns argued the written policy was a regulation which was invalid because it was not filed and published. This court recognized that 77-415(4) defines a rule or regulation as a statement of policy of general application that has the effect of law. Applying this definition to the policy in question, we stated:

"The 'policy' under consideration here has general application to all persons applying for a professional engineering license by reciprocity or comity. We see this application as being broad enough to satisfy the requirement of 'general application.' Under its policy, the BTP denies, in a summary fashion, any application for licensure by comity with another state if the original license has been permitted to lapse. The BTP certainly treats its internal policy as having the effect of law,

and we conclude that it does have the effect of law under the circumstances shown.

"In addition, the statute defines a 'rule' or 'regulation' as a 'statement of policy' issued to 'interpret legislation enforced or administered by [a] state agency.' It specifically provides that '[e]very rule and regulation adopted by a state agency to govern its enforcement or administration of legislation shall be adopted by the state agency and filed as a rule and regulation as provided in this act.' Under the facts shown, we conclude that the written policy in this case was passed by the BTP and utilized by the BTP to 'govern its enforcement or administration of legislation.' Indeed, in this case, the BTP argues that it passed the policy in question to implement or interpret the provisions of K.S.A. 74-7024(a)." 19 Kan. App. 2d at 87.

This court held the policy was a rule or regulation, as defined by statute which had to be filed and published to have any force and effect. 19 Kan. App. 2d at 87-88. This court then reversed the district court, since the policy had not been filed or published as required by law.

A rule or regulation is a standard, policy statement, or general order of *general application*, which has the effect of law, adopted or issued by a state agency to interpret legislation enforced or administered by that agency. K.S.A. 1996 Supp. 77-415(4).

Here, the policy memorandum states that an inmate is assigned UAC status after being found guilty in a disciplinary report for the following: refusing to accept employment or required programming, being separated from employment or programming due to placement in segregation, changing security classification which results in a transfer to a higher custody housing unit, or being terminated from employment or programming. This policy is generally applied to all inmates at LCF. In our view, the policy's application is not broad enough to cover the requirement of "general application" and, thus, distinguishes this case from *Bruns*.

There is no indication from the record that other correctional facilities under the Department of Corrections (DOC) have implemented or are required to implement the policy in question. Gilmore points out that the corrections manager at LCF testified that UAC status falls under both the DOC's Internal Management Policies and Procedures (IMPP) and the general orders of the facility. However, the corrections manager clarified that *each insti-*

*tution has discretion* in adopting the UAC policy because each facility determines the manner in which inmates are housed.

We, therefore, find that the policy at LCF does not fulfill the "general application" requirement under K.S.A. 1996 Supp. 77-415(4) because it does not apply to all inmates in the custody of the DOC. Therefore, the district court erred in concluding the policy was a rule or regulation under 77-415(4).

LCF argues the policy memorandum is an order under K.S.A. 1996 Supp. 75-5256, which provides:

"(a) The warden of each correctional institution may issue orders subject to the provisions of law and the rules and regulations adopted by the secretary of corrections, as the warden may deem necessary for the government of the correctional institution and the enforcement of discipline therein.

"(b) All rules and regulations or orders for the government of a correctional institution and the enforcement of discipline therein adopted or issued by the secretary of corrections and all orders issued by the warden of the correctional institution shall be published and made available to all inmates, other than rules and regulations and orders relating to emergency or security procedures. Every order issued by the warden of a correctional institution shall be effective until rescinded or amended by the warden or until disapproved by the secretary."

In this case, the policy memorandum was issued by LCF's warden and expressly states that it is to serve as an addition to a facility general order until the order is revised. Additionally, the UAC policy was adopted to encourage inmates to participate in employment assignments and programs. Implied within these policies is the fact that LCF finds this policy necessary for the proper management and enforcement of discipline at the facility. Therefore, we conclude that the policy memorandum falls within the definition of an order issued by the warden of a correctional facility under 75-5256.

Under K.S.A. 77-421a, orders issued by the director of a correctional facility are not subject to the filing and publication requirements of K.S.A. 77-415 *et seq.* before taking effect. However, K.S.A. 1996 Supp. 75-5256(b) requires that the warden's orders, other than those relating to emergency or security procedures, be published and made available to all inmates. These orders are then effective until rescinded or amended by the warden or disapproved by the Secretary of Corrections. Here, there is no dispute that the memorandum in question was issued and pub-

lished with the general orders throughout LCF. Thus, the policy in question became effective when published and made available to the inmates at LCF.

Gilmore contends the policy in question is unlawful because it conflicts with K.A.R. 44-5-105(c)(1) by imposing a penalty for those inmates who refuse programming. K.A.R. 44-5-105(c)(1) states:

"Any inmate may elect not to participate in a formal program plan. In such an event, that inmate shall not be prohibited from participating in any programs as are available, but the inmate shall first obtain the recommendation and approval of the unit team. The unit team may recommend the inmate for parole eligibility based on the inmate's rehabilitation progress accomplished by the inmate's own initiative. *The inmate shall not be penalized for refusal to participate in a formal program plan.* The inmate shall nevertheless be subject to all the regulations of the secretary and the orders of the principal administrator, and shall be required to participate in any work assignments which are made by the unit team." (Emphasis added.)

Generally, an agency may not disregard its own rules and regulations, and where it fails to follow the rules which it has promulgated, its orders are unlawful. *Tew v. Topeka Police & Fire Civ. Serv. Comm'n*, 237 Kan. 96, 100, 697 P.2d 1279 (1985). As Gilmore notes, the corrections manager at LCF testified that assignment to UAC imposes a penalty on an inmate for refusing programming by preventing him from obtaining employment or programs for a certain time period.

"In its plain ordinary sense 'penalty' means to be put to a disadvantage, loss or hardship due to some action, such as a transgression or error." *State v. Finley*, 199 Kan. 615, 620, 433 P.2d 414 (1967).

The loss of employment and programming which results from being assigned UAC status does suggest that the policy is such a penalty which contravenes K.A.R. 44-5-105(c)(1). However, since the operation of penal institutions is solely an executive function, the policy Gilmore challenges must clearly show an infringement of a constitutional right, shock the general conscience, or be intolerable to fundamental fairness before the judicial branch will interfere. See *Swisher v. Hamilton*, 12 Kan. App. 2d 183, 184, 740 P.2d 95, *rev. denied* 242 Kan. 905 (1987).

As the district court recognized, the DOC is given broad discretion in housing and classifying inmates. See K.S.A. 1996 Supp. 75-5210. Moreover, an inmate does not have a constitutionally protected liberty interest in housing, classifications, or employment. *Moody v. Daggett*, 429 U.S. 78, 88 n.9, 50 L. Ed. 2d 236, 97 S. Ct. 274 (1976) (inmates do not have a right in classification or eligibility for rehabilitative programs); *Meachum v. Fano*, 427 U.S. 215, 224, 228-29, 49 L. Ed. 2d 451, 96 S. Ct. 2532 (1976) (inmates do not have a liberty interest in not being transferred to a different facility); *Templeman v. Gunter*, 16 F.3d 367, 370 (10th Cir. 1994) (inmates do not have a right to employment in absence of statute authorizing such right).

Furthermore, the restrictions imposed by being assigned UAC status do not violate due process because these restrictions do not impose a significant and atypical hardship on a prisoner not contemplated in his original sentence. See *Amos v. Nelson*, 260 Kan. 652, 666, 923 P.2d 1014 (1996); *Murphy v. Nelson*, 260 Kan. 589, 601-02, 921 P.2d 1225 (1996); *Davis v. Finney*, 21 Kan. App. 2d 547, 558-59, 902 P.2d 498 (1995). Thus, the policy does not violate K.A.R. 44-5-105(c)(1) by unduly penalizing an inmate who refuses programming.

Given our findings that the policy in question is not a rule or a regulation, it is not necessary to address the other issue raised by LCF.

Reversed.