**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 1 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RODGER LOVE,

     Plaintiff-Appellant,

and

RON BRANNING; JOSEPH MABERY;
THOMAS OVERSTEDT,

     Plaintiffs,

v.

DAVID R. McKUNE, Warden, Lansing
Correctional Facility; and CHARLES E.
SIMMONS, Secretary of Corrections,
Topeka, Kansas,

     Defendants-Appellees.

No. 01-3332

(D.C. No. 01-CV-3301-GTV)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **BRISCOE** and **MURPHY,** Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of this

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

Plaintiff Rodger Love, Jr., a Kansas state prisoner appearing pro se, appeals the district court's dismissal of his 42 U.S.C. § 1983 action.  We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm in part and dismiss in part.

Love and three other inmates filed suit for declaratory and injunctive relief alleging they and other inmates incarcerated at the Lansing Correctional Facility were being forced to participate in what they described as an "involuntary behavioral modification system" without an individualized showing of need.  Plaintiffs alleged this forced participation violated their Fourteenth Amendment due process rights, as well as their First and Eighth Amendment rights.  Plaintiffs further alleged the system was in conflict with various Kansas administrative regulations.  The district court dismissed the complaint for failure to state a claim upon which relief could be granted.  Only Love has appealed.[1]

The "involuntary behavior modification system" referred to is Internal Management Policy and Procedure (IMPP) 11-101, adopted by the Kansas Department of Corrections in January 1996.  "IMPP 11-101 implements a statewide incentive level

_____

[1]  The notice of appeal was signed by Love only.  Although he contends the other plaintiffs intended to appeal, their failure to sign the notice of appeal is fatal.  See 10th Cir. R. 3.1 ("Every notice of appeal must be signed by the appellant or by counsel for the appellant.")  Therefore, Love is the only proper appellant before this court.  Id.

2

system which ties inmate privileges to participation in programs and good behavior." Pool v. McKune, 987 P.2d 1073, 1076 (Kan. 1999). Under the system, incarcerated inmates are assigned to one of four levels (Intake Level through Level III) and, in turn, are provided with a corresponding level of privileges (e.g., television ownership, handicrafts, participation in organizations, use of outside funds, canteen expenditures, incentive pay, visitation). In order to be assigned to a higher level and obtain more privileges, inmates must "generally remain[] free of offenses and demonstrat[e] a willingness to participate in recommended programs." Stansbury v. Hannigan, 960 P.2d 227, 230 (Kan. 1998). An inmate may be assigned to a lower level, and in turn lose privileges, for a variety of reasons, including commission of disciplinary offenses or refusal to participate in a recommended program. Id. at 237.

The Kansas Supreme Court previously has addressed and rejected due process challenges to IMPP 11-101 similar to the one now asserted in this action. For example, in Stansbury, the court reviewed the restrictions imposed on inmates assigned to Level I under IMPP 11-101 and concluded that none of those restrictions infringed upon inmates' property or liberty interests and thus did not implicate due process. 960 P.2d at 238-39. With respect to inmates' liberty interests in particular, the court stated:

> The restrictions imposed at Level I do not impose an atypical or significant hardship on the petitioner in relation to the ordinary incidents of prison life. While the petitioner is denied the use of certain personal electronic equipment, this does not impose a significant hardship. Nor do the restrictions on purchases at the canteen or the types of purchases and personal property allowed constitute an atypical hardship. While Level I

3

has a restriction on visitation, the United States Supreme Court has held that the denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence. Also, while Level I imposes some incentive pay restrictions, it has been held that an inmate does not have a constitutionally protected interest in employment. It is true that the test for whether a restriction is a significant hardship is not whether such restriction would violate due process on its own. However, neither the restrictions on visitation or incentive pay constitute a significant or an atypical hardship on an inmate which would not have been contemplated in his or her original sentence.

Id. at 238 (internal citations omitted). Although we are not bound by Stansbury, we find its reasoning persuasive and conclude the due process analysis engaged in by the Kansas Supreme Court is equally applicable to inmates such as Love who are assigned to Level III.[2]

As regards Love's claims regarding the more severe restrictions imposed on inmates assigned to the Intake Level and Level I (the two lowest levels), Love has no standing to challenge these restrictions given his current assignment to Level III. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (outlining three elements necessary to establish standing: (1) injury in fact, (2) causal connection between injury and conduct complained of, and (3) likelihood that injury will be redressed by a favorable decision). Love also contends the restrictions on visitation imposed by IMPP 11-101 violate the inmates' First or Eighth Amendment rights. As with his other claims pertaining to the Intake Level and Level I, Love has no standing to challenge visitation

---

[2] The restrictions imposed on inmates assigned to Level III are less severe than those imposed on inmates assigned to Level I (the level at issue in Stansbury).

4

restrictions which are inapplicable to Level III.

Love also asserts that IMPP 11-101 conflicts with various Kansas administrative regulations.  We agree with the district court that § 1983 provides no basis for redressing these alleged violations of state law.[3]  See Jones v. City & County of Denver, Colo., 854 F.2d 1206, 1209 (10th Cir. 1988).

AFFIRMED IN PART; DISMISSED IN PART.  The mandate shall issue forthwith.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

---

[3]  We also note that most of plaintiff's arguments are foreclosed by Kansas precedent.  See Vinson v. McKune, 960 P.2d 222, 225-27 (Kan. 1998) (rejecting argument that IMPP 11-101 is invalid because it was not correctly adopted or published in the Kansas Register); Gilmore v. McKune, 940 P.2d 78, 83-84 (Kan. Ct. App. 1997) (rejecting argument that policy memorandum creating "unassigned for cause" status for inmates who refused programming did not violate Kansas administrative regulation prohibiting penalizing inmate for refusing to participate in formal program); Gilmore v. McKune, 915 P.2d 779, 781 (Kan. Ct. App. 1995) (interpreting K.A.R. 44-5-105(c)(1), which provides that an inmate "shall not be penalized" for refusing to participate in a formal program plan, as prohibiting the State from taking "formal disciplinary action" against an inmate).