NOT DESIGNATED FOR PUBLICATION

No. 127,583

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MANUEL C. ALCALA,
*Appellant*,

v.

JEFF ZMUDA, SECRETARY OF CORRECTIONS, and
DONALD LANGFORD, WARDEN, ELLSWORTH CORRECTIONAL FACILITY,
*Appellees*.

MEMORANDUM OPINION

Appeal from Ellsworth District Court; CAREY L. HIPP, judge. Submitted without oral argument. Opinion filed November 1, 2024. Affirmed.

*Kristen B. Patty*, of Wichita, for appellant.

*Robert E. Wasinger*, legal counsel, Kansas Department of Corrections, for appellees.

Before CLINE, P.J., MALONE and SCHROEDER, JJ.

PER CURIAM: Manuel C. Alcala filed a K.S.A. 60-1501 petition with the district court first alleging Ellsworth Correctional Facility (ECF) unlawfully denies inmates minimum wage jobs contrary to K.A.R. 44-8-116 and IMPP 15-102A when it created criteria based on parole eligibility dates, and second, that ECF failed to comply with K.S.A. 75-5256, resulting in a violation of inmates' Fourteenth Amendment rights to fair notice and due process under the United States Constitution. The district court correctly decided that inmates, like Alcala, do not have a constitutionally protected interest in employment. Since ECF has limited employment opportunities, it did not err in

1

determining it is in the best interests of the facility to reserve those employment opportunities based on parole eligibility criteria. ECF's employment policy also does not rise to the level of shocking and intolerable conduct or continuing mistreatment of a constitutional stature, the legal standard necessary to avoid dismissal of a K.S.A. 60-1501 petition.

FACTUAL AND PROCEDURAL BACKGROUND

Alcala, a resident at ECF, filed an inmate request to a staff member questioning why he was ineligible to work a private job. The staff member replied that Alcala could not participate in the program "due to time to serve" unless the facility "expand[ed] the candidate pool and move the date further out." Alcala next filed an inmate grievance complaint citing IMPP 15-102A, which concerns the eligibility and placement in industries employment for inmates. He did not apply IMPP 15-102A to his situation, rather, he simply wrote the language of IMPP 15-102A on the grievance form.

Donald Langford, ECF's warden, responded to Alcala's grievance form:

"I have reviewed your grievance and response from CCI C. Dean. IMPP 15-102 does not have any time frame that would make anyone ineligible. Our responsibility as a facility is to get as many people as possible an opportunity to work private industry prior to completing their sentence. With as much time as you have to serve, we could get several residents a chance at private industry employment for a couple of years each before you would even reach your parole eligibility date. For that reason, the request for you to be considered for private industry employment was denied. I understand that previous administrations hired several residents that have a lot of time to serve, at that time the policy provided exceptions that could be made by the Warden. The policies have changed and so has the administration."

Alcala appealed the grievance to the Secretary of Corrections. He argued "ECF's application of IMPP 15-102A is misguided and misunderstood by the staff at ECF." The

Secretary of Corrections designee responded to Alcala's appeal and noted Alcala "offer[ed] no evidence or argument that suggests that the response rendered by staff at the facility is wrong."

Alcala then filed a K.S.A. 60-1501 petition on November 16, 2022, against Langford and Jeff Zmuda, the Secretary of Corrections. Alcala alleged that he was being unlawfully deprived of his Fourteenth Amendment right to fair notice, due process, and equal protection. He explained that ECF determined him to be ineligible for private industry employment because his parole eligibility date is more than seven years in the future. He posed two issues with ECF's policy: First, it unlawfully denies inmates minimum wage jobs contrary to K.A.R. 44-8-116 and IMPP 15-102A when it created criteria based on parole eligibility dates, and second, Langford failed to comply with K.S.A. 75-5256, resulting in a violation of inmates' Fourteenth Amendment rights to fair notice and due process.

The Department of Corrections moved to dismiss the petition because Alcala had not sustained his burden of proof to show that he had a constitutional, statutory, or regulatory right to have a private industry job or could even be eligible for one. The district court granted the motion to dismiss because Alcala "has no constitutional, statutory or regulatory right to private industry employment," and Langford is "provided wide latitude and discretion in the operation of the correctional facilities and without a[n] established constitutional right or a clear statutory or regulatory directive the Court will not interfere in the said operation of the correctional facility."

Alcala appeals this decision.

3

K.S.A. 2023 Supp. 60-1501(a) permits: "[A]ny person in this state who is detained, confined or restrained of liberty on any pretense whatsoever . . . may prosecute a writ of habeas corpus in . . . the district court of the county in which such restraint is taking place." To avoid dismissal of a K.S.A. 60-1501 petition, allegations must be made of shocking and intolerable conduct or continuing mistreatment of a constitutional stature. *Johnson v. State*, 289 Kan. 642, 648, 215 P.3d 575 (2009). Alcala contends the district court erred in summarily dismissing his petition and should have held an evidentiary hearing.

*Standard of review*

The Kansas Supreme Court recently articulated the two ways a district court can handle a K.S.A. 60-1501 petition:

> "Chapter 60, Article 15 of Kansas Statutes Annotated contemplates two possible paths to adjudicate a K.S.A. 60-1501 petition. First, when presented with the petition for a writ of habeas corpus, the court may determine from the face of the petition and any attached exhibits that the petitioner is entitled to no relief and deny the petition summarily. Second, the court may determine from the petition and attached exhibits that the petitioner may have a right to relief, in which case the court should issue a writ of habeas corpus, appoint counsel, order the respondent to file an answer, hold a hearing, and determine the cause." *Denney v. Norwood*, 315 Kan. 163, Syl. ¶ 5, 505 P.3d 730 (2022).

The district court exercised the first option and summarily denied Alcala's petition. If a district court summarily dismisses a K.S.A. 60-1501 petition without issuing a writ, "appellate courts are in just as good a position as the district court to determine whether it plainly appears from the face of the petition and any supporting exhibits that the plaintiff

is entitled to no relief." *Denney*, 315 Kan. at 175. This means "an appellate court's review of a summary denial of a K.S.A. 60-1501 petition is de novo." *Denney*, 315 Kan. at 175.

*Analysis*

Alcala offers two arguments on appeal. He first contends ECF unlawfully denies inmates minimum wage jobs contrary to K.A.R. 44-8-116 and IMPP 15-102A when it created criteria based on parole eligibility dates. Alcala secondly argues Langford failed to comply with K.S.A. 75-5256, resulting in a violation of inmates' Fourteenth Amendment rights to fair notice and due process. He does not expand on these arguments. Rather, he offers these conclusory statements without explanation.

In his K.S.A. 60-1501 petition, Alcala argued K.A.R. 44-8-116 permits employment for inmates "without regard to their parole eligibility date." K.A.R. 44-8-116 states:

> "Private enterprises which operate on the grounds of a correctional institution and employ inmates shall be work release programs. Criteria for eligibility set forth in K.A.R. 44-8-114 shall be applicable except that inmates with a custody level higher than minimum and meeting all other criteria may be eligible for participation without regard to their parole eligibility date."

Langford argues this language does not show inmates have any right to a private industry job. Langford also points out the regulation even notes if inmates meet other criteria, they "*may* be eligible" and not *must* be eligible. (Emphasis added.) K.A.R. 44-8-116.

When interpreting administrative regulations, we "must give effect to the intent expressed by the plain and unambiguous language in the regulation." *Pener v. King*, 305 Kan. 1199, 1208, 391 P.3d 27 (2017). This means reviewing courts give common words their ordinary meanings, without adding to or subtracting from the text as it appears. We

only resort to textual construction when the language is ambiguous and give no deference to an agency's interpretation of its regulations. *State v. Gray*, 306 Kan. 1287, 1294, 403 P.3d 1220 (2017); *May v. Cline*, 304 Kan. 671, 675, 372 P.3d 1242 (2016).

Langford is correct to argue the language of K.A.R. 44-8-116 supports the conclusion that facilities like ECF are not mandated to provide inmates with private industry employment. There is a difference between the "directory language such as 'shall' or 'must' . . . [and] the permissive word 'may.'" *Hill v. Kansas Dept. of Labor*, 292 Kan. 17, 21, 248 P.3d 1287 (2011) (interpreting a statute's use of the word "may"). The regulation states inmates "may be eligible" if inmates are eligible under K.A.R. 44-8-114 (revoked March 22, 2002), "except . . . inmates with a custody level higher than minimum," and the inmate "meet[s] all other criteria." K.A.R. 44-8-116. A plain reading of this regulation would lead a reasonable reader to conclude prisons "may" permit an inmate to engage in employment, but facilities are not required to.

It is true that the regulation notes, like Alcala argues, an inmate's participation should be "without regard to their parole eligibility date." But this conclusion is based on the first half of the regulation's requirements:  eligibility under K.A.R. 44-8-114 (revoked), the inmate is not at a custody level higher than minimum, and the inmate "meet[s] all other criteria." Langford correctly contends that the regulation does not expressly grant an employment right to inmates.

The only directory language in the regulation is that "[p]rivate enterprises which operate on the grounds of a correctional institution and employ inmates *shall* be work release programs" and "[c]riteria for eligibility set forth in K.A.R. 44-8-114 *shall* be applicable." (Emphases added.) K.A.R. 44-8-116. These statements, respectively, only identify private enterprises as work release programs and express that eligibility requirements in K.A.R. 44-8-114 (revoked) must be followed. In sum, even if the regulation notes inmates should be considered for this program "without regard to their

6

parole eligibility date," it nevertheless does not guarantee a right to employment and states inmates who are eligible "may" be permitted to participate.

Alcala also argued below IMPP 15-102A holds "inmates-residents are eligible for minimum wages jobs regardless of eligibility dates." IMPP 15-102A is a Department of Corrections policy "to prepare residents for, and provide access to, prison-and-non-prison based private industry employment." It expresses the procedures to prepare residents for industry employment, address eligibility and placement in industries employment, and for posting and filling industry employment.

The policy specifies "[a] resident who is maximum or medium custody may be placed in an industry job." IMPP 15-102A(II)(E)(1). IMPP 15-102A, like K.A.R. 44-8-116, does not guarantee an inmate a right to a job.

The policy does put a time frame on an inmate's length of employment. It states: "A resident who is maximum or medium custody may be placed in an industry job, whether KCI or private, if the job is within those custody units, and may remain in the job for up to 7 years. An exception for cause may be granted by the Warden." IMPP 15-102A(II)(E)(1).

This language plainly means inmates may remain in a job up to seven years. In Alcala's petition, he attaches a letter from ECF's classification administrator, Terry Chaput, that appears to have been sent to another inmate. In the letter, Chaput noted that the facility "ha[s] chosen to continue to give preference for Private Industry jobs to those residents who are within 7 to 8 years of release." ECF made this decision in part because the facility only has "roughly 60 Private Industry jobs available for our Central Unit population at ECF." The administrator told the inmate that consequently "if residents with more than 8 years are placed into these jobs, these jobs would be essentially tied up

for a significa[nt] amount of time, thus limiting the 'Pathway for Success' for the rest of the population at ECF as they are preparing for release."

ECF further believed "that this 7 years at a Private Industry Job should be at the end of the resident's sentence to give the resident the best chance of success upon release." Prison officials "are vested with wide discretion in the discharge of their duties." *Levier v. State*, 209 Kan. 442, 450-51, 497 P.2d 265 (1972), *abrogated on other grounds by Stanley v. Sullivan*, 300 Kan. 1015, 1018, 336 P.3d 870 (2014), a point that Alcala acknowledges. If the prison has limited resources—like only 60 available jobs—they should be given the deference to determine who those jobs go to, so long as it complies with the law. And here, IMPP 15-102A does not mention whether parole eligibility should matter. The prison's policy of giving inmates with less than eight years of incarceration the first opportunity to be placed in employment also does not conflict with IMPP 15-102A.

Langford also notes Alcala failed to attach the entire IMPP 15-102A to his petition. Alcala failed to include a section of IMPP 15-102A which notes, in part:

> "NOTE: The policy and procedures set forth herein are intended to establish directives and guidelines for staff, residents and offenders and those entities that are contractually bound to adhere to them. They are not intended to establish State created liberty interests for employees, residents or offenders, or an independent duty owed by the Department of Corrections to employees, residents, offenders, or third parties. . . . The policy and procedures contained within this document are intended to be compliant with all applicable statutes and/or regulatory requirements of the Federal Government and the state of Kansas. This policy and procedure are not intended to establish or create new constitutional rights or to enlarge or expand upon existing constitutional rights or duties."

This language further demonstrates that IMPP 15-102A was not crafted to create a constitutional interest in an inmate's ability to be employed. Further, Alcala recognizes

that "it has been held that an inmate does not have a constitutionally protected interest in employment." *Stansbury v. Hannigan*, 265 Kan. 404, 421, 960 P.2d 227 (1998).

Neither K.A.R. 44-8-116 nor IMPP 15-102A grant Alcala the right to employment.

Alcala secondly argued in his petition that Langford violated K.S.A. 75-5256(a) because he "issued a verbal unlawful order to staff and inmates that violates KAR 44-8-116 and IMPP 15-102A" and K.S.A. 75-5256(b) because "[t]here is no current publish[ed] order that inmates or staff can cite for inmates to review." According to him, "[v]erbal and unpubished [*sic*] orders are unlawful." K.S.A. 75-5256 states:

"(a) The warden of each correctional institution may issue orders subject to the provisions of law and the rules and regulations adopted by the secretary of corrections, as the warden may deem necessary for the government of the correctional institution and the enforcement of discipline therein.

"(b) All rules and regulations or orders for the government of a correctional institution and the enforcement of discipline therein adopted or issued by the secretary of corrections and all orders issued by the warden of the correctional institution shall be published and made available to all inmates, other than rules and regulations and orders relating to emergency or security procedures. Every order issued by the warden of a correctional institution shall be effective until rescinded or amended by the warden or until disapproved by the secretary."

Alcala is right that K.S.A. 75-5256(b) requires most rules, regulations, or orders issued by the Secretary of Corrections and the warden to be published and made available to all inmates. But he does not explain in his petition what unlawful order he is talking about. We could assume he means that ECF's policy denying inmates employment based on parole eligibility dates was issued as a verbal order. But he does not articulate this in his petition. Even assuming that is what Alcala meant to argue, he would still likely be

9

wrong based on an attachment he provided in his petition. The attachment is a document from ECF noting its hiring eligibility requirements. It states: "[H]owever, in accordance with ECF General Order 19-101, Xl.5.g. '. . . *INMATES WITH LESS THAN 96 MONTHS OF TIME TO SERVE WILL BE CONSIDERED FIRST FOR EMPLOYMENT*.'" It thus appears the order was a published document. While this document does not show it was distributed to all inmates, it nevertheless eliminates Alcala's claim that this policy was issued via a verbal order.

Alcala also fails to make this argument on appeal. He does not argue that Langford failed to comply with K.S.A. 75-5256 by improperly issuing a verbal unlawful order. Issues not adequately addressed in briefing are treated as waived or abandoned. *State v. Gallegos*, 313 Kan. 262, 277, 485 P.3d 622 (2021).

He ultimately posits three concessions that are detrimental to his appeal. Alcala cites three cases in a string cite following a "*But see*." While Alcala does not apply rules of law from the cases to the facts of his case, a reasonable conclusion would be that he impliedly recognizes his situation does not meet the standards mandated by the cases since he signifies the cites are contradictory authority to his position.

He first notes that to avoid summary dismissal of a K.S.A. 60-1501 petition, he must have alleged "shocking and intolerable conduct or continuing mistreatment of a constitutional stature." *Johnson*, 289 Kan. at 648. Shocking and intolerable conduct means the government's alleged conduct is "'so egregious, so outrageous that it . . . shock[s] the contemporary conscience.'" 289 Kan. at 651.

The Kansas Supreme Court has noted one example of shocking conduct could occur when Sexual Predator Treatment Program "personnel [are] compelled to carry out a prescribed course of sex offender treatment, and if they [are] indifferent to that statutory obligation." *Johnson*, 289 Kan. at 653. ECF's personnel were not compelled by law to

provide Alcala employment. Nor does his employment denial rise to the level of a constitutional stature. See *Gilmore v. McKune*, 23 Kan. App. 2d 1029, 1037, 940 P.2d 78 (1997) ("[A]n inmate does not have a constitutionally protected liberty interest in housing, classifications, or employment.") (citing *Moody v. Daggett*, 429 U.S. 78, 88 n.9, 97 S. Ct. 274, 50 L. Ed. 2d 236 [1976]; *Meachum v. Fano*, 427 U.S. 215, 224, 228-29, 96 S. Ct. 2532, 49 L. Ed. 2d 451 [1976]; *Templeman v. Gunter*, 16 F.3d 367, 370 [10th Cir. 1994]).

Alcala further observes prison officials "are vested with wide discretion in the discharge of their duties." *Levier*, 209 Kan. at 450-51. Finally, and most dispositively, Alcala recognizes "it has been held that an inmate does not have a constitutionally protected interest in employment." *Stansbury*, 265 Kan. at 421. Given that Alcala does not have a constitutionally protected interest in employment and ECF should be given discretion in allocating its limited employment opportunities among inmates, we find ECF's employment policy does not rise to the level of shocking and intolerable conduct or continuing mistreatment of a constitutional stature.

Affirmed.